**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **TERRY BRANUM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 18-CV-281-KEW** |
| | ) | |
| **ORSCHELN FARM AND HOME, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

Gregg J. Lytle, OBA #20759
(glytle@ok-counsel.com)
Kelly M. Hunt, OBA #31387
(kmhunt@ok-counsel.com)
9343 E. 95th Court
Tulsa, Oklahoma  74133
Telephone:  (918) 382-9200
Facsimile:  (918) 382-9282
**ATTORNEYS FOR PLAINTIFF**

# TABLE OF CONTENTS

INTRODUCTION ..............................................................................1

PLAINTIFF'S ADDITIONAL RELEVANT MATERIAL FACTS……………...……………...2

PLAINTIFF'S RESPONSE TO "UNDISPUTED MATERIAL FACTS"………..….....……...5

ARGUMENT AND AUTHORITIES……………………………………………...9

     1.     SUMMARY JUDGMENT STANDARD……………..…………………………9

     II.    PLAINTIFF'S AGE DISCRIMINATION CLAIM DOES NOT FAIL AS A MATTER OF LAW………………………..……………………………….9

          A.     PLAINTIFF'S PRIMA FACIE CASE STANDS………..……………10

          B.     EVIDENCE TERMINATION WAS PRETEXT………..……………12

     III.   RESPONSE ON OADA CLAIM.…………………………………………16

     IV.   PLAINTIFF MADE APPROPRIATE ATTEMPTS TO MITIGATE HER DAMAGES………………………………………..……………………16

CONCLUSION…………………………………………………………………18

# TABLE OF AUTHORITIES

**CASES**                                                                                    **PAGE(S)**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)……………..……………………………………..12

*Bolton v. Sprint/United Management Co.*, 220 F. App'x 761(10th Cir.2007……..………...13, 14

*Deepwater Invs. Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105 (10th Cir.1991)………………...12

*Dewitt v. Sw. Bell Telephone Co.*, 845 F.3d 1299 (10th Cir. 2017)…………………………………15

*EEOC v. Sandia Corp.*, 639 F.2d 600 (10th Cir.1980)…………………………………………………19

*Gonzagowski v. Widnall*, 115 F.3d 744 (10th Cir.1997)…………………………………………………12

*Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220 (10th Cir. 2000)………………………...16

*MacDonald v. Eastern Wyoming Mental Health Center*, 941 F.2d 1115 (10th Cir.1991)…….13 14

*Macon v. United Parcel Serv., Inc.* 743 F.3d 708, 714 (10th Cir. 2014)…………………………15

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792(1973)…………………………………………………15

*McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125 (10th Cir.1998)…………………………12, 13

*McWilliams v. Jefferson County*, 463 F.3d 1113 (10th Cir.2006)………………………………...12

*Morgan v. Hilti, Inc.*, 108 F.3d 1319 (10th Cir.1997)…………………………………………………15

*Rivera v. City and County of Denver*, 365 F.3d 912 (10th Cir.2004)………………...12, 13, 15 16

*Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981)……………………………………15

*Wagoner v. Pfizer, Inc.*, 2009 WL 304340 (D.Kan. Feb.9, 2009)………………………………...14

*Young v. Cobe Laboratories, Inc.*, 1998 WL 184449 (10th Cir. Apr.17, 1998)…………………..12

Plaintiff Terry Branum ("Branum") submits her Response to Defendant Orscheln Farm and Home LLC's ("Defendant") Motion for Summary Judgment ("Defendant's Motion"). As in initial matter, the entire predicate for Defendant's Motion for Summary Judgment relies on inadmissible hearsay as the alleged declarant cannot be identified and has given no statement under oath. For that reason alone, the motion should be denied. For the reasons set forth below, Defendant is not entitled to summary judgment in this matter.

## INTRODUCTION

Terry Branum is a kind woman who loyally gave over 22-years of her life to her employer. During her tenure, Ms. Branum strove to provide good customer service and to help lower the store's hefty theft numbers. Even now, Ms. Branum's co-workers remember her to have always been friendly, motherly, level-headed, and to never have had sad a bad thing about anyone. Ms. Branum's loyalty was rewarded by her being terminated after being falsely portrayed as a dishonest racist. Defendant claims that this false portrayal constitutes a legitimate reason for terminating Ms. Branum. However, Defendant's reason is so shrouded in weakness, inconsistency, contradiction, and misrepresentations that it is hardly believable. The termination was facilitated by a manager who constantly made condescending remarks about Ms. Branum's age and retirement plans and who had recently been reported to the corporate office by Plaintiff. This manager also allowed Ms. Branum's younger co-workers to make similar comments. After Ms. Branum's termination, these younger co-workers benefitted by being the ones who took over Ms. Branum's job duties. As will be clearly shown, Defendant's own witnesses are the ones who have established the weakness, inconsistency, contradiction, and misrepresentations that defeat Defendant's allegedly legitimate reason for Ms. Branum's termination. The entire premise Defendant used to terminate Plaintiff is a false narrative that is not based upon admissible evidence.

Not a single person can testify under oath that they can identify the person making the complaint that formed the basis of her termination. In fact, its entirely possible that it was made up by a co-worker or friend of a co-worker to cause Plaintiff to be fired. As such, Defendant's Motion for Summary Judgment should be denied in its entirety.

## PLAINTIFF'S ADDITIONAL RELEVANT MATERIAL FACTS

1. Terry Branum had been an employee of the Okmulgee Orscheln Farm & Home store for over 22 years. **Ex. A, Pl. Dep. 23:8-10.**

2. Branum's former co-workers don't recall Branum ever being angry, using foul language, or treating any specific person, or type of person, differently than any another. **Ex. B, Haney Dep. 11:17-24; Ex. C, McKinney Dep. 19:12-24; Ex. D, Broyles Dep. 23:16-17**

3. Michael Adcock ("Adcock") was Branum's store manager. **Ex. A, Pl. Dep. 25:12-26:23.**

4. Adcock made numerous harassing remarks about Branum's age, including referring to her as "the old lady." **Ex. A, Pl. Dep. 25:12-26:23.**

5. Adcock would make condescending comments about Branum's age if she couldn't lift heavier items. **Ex. A, Pl. Dep. 49:1-5.**

6. Adcock told Branum to retire on a weekly basis and accuse Branum's age of "getting" to her. **Ex. A, Pl. Dep. 25:12-26:23, 49:10-13.**

7. Branum's younger co-worker to refer to her as "granny grump" on a daily basis. **Ex. A, Pl. Dep. 40:1-9, 13-22; Ex. B, Haney Dep. 7:10-15.**

8. Branum's younger female co-workers consistently inquired about when Branum would retire so they could take over her position. **Ex. A, Pl. Dep. 50:18-22.**

9.      Adcock gave Branum's younger female workers the more desirable job duties. **Ex. A, Pl. Dep. 47:15-19** ("the younger ones are given things to be done that I could very possibly could have done. And they make the remark, well, probably because of your age [Adcock] wants you to rest.").

10.      Branum did not report Adcock because she liked her job and acknowledged the difficulties in an older person finding a similar position elsewhere. **Ex. A, Pl. Dep. 27:1-22.**

11.      Due to her performance and seniority, Branum worked her way up from cashier to department head. **Ex. A, Pl. Dep. 23:18-24.**

12.      On September 22, 2017, Branum reported her supervisor Adcock to Defendant's Loss Prevention team for an improper return, involving a fellow employee Dawn McKinney.

13.      Just weeks after the report to Loss Prevention, on October 6, 2017, a caller self-identified as "Jason Smith" telephoned Defendant's customer service line to report that Branum used a racial slur approximately one week earlier. **Ex. E, Miller Dep. p. 41:4-10; Ex. G, Wybert Dep. p. 13:11-25.**

14.      Defendant's Human Resources department requested that Adcock contact the caller to verify the story. **Ex. E, Miller Dep. 64:13-21.**

15.      Adcock called the provided number and the person answering the phone stated that he had no idea who or what Mr. Adcock was talking about. **Ex. F. Adcock Dep. 12:7-13; Ex. D. Broyles Dep. 19:13-20.**

16.      Adcock alleges that sometime later, on an unknown date and time, the anonymous complainant called back. **Ex. F. Adcock Dep 12:7-13; Ex. D. Broyles Dep. p. 19:13-20, 20:15-20.**

17.    During the alleged callback, the individual admitted to using a false name and phone number. **Adcock Dep. 101:21-25; Miller Dep. 45:3-8; Broyles Dep. 20:25-21:3.**

18.    Adcock reported that Branum allegedly made a racial comment to herself after two black men left the store. **Adcock Dep. p. 61:1-9; Miller Dep. p. 45:19-25, p. 46:1-9.**

19.    Adcock reported the alleged callback to Human Resources on October 10, 2017, but cannot say when the call actually occurred. **Adcock Dep. 40:3-6, 87:2-7.**

20.    Adcock never verified the caller's identity and cannot provide an actual name, yet assured Defendant that the anonymous caller was credible. **Adcock Dep. 12:7-13, 53:16-19, 101:21-102:21, 103:3-25; Miller Dep. 57:22-24; Pl. Dep. 35:24-25; Broyles Dep. 29:18-24.**

21.    Based solely on Adcock's comments, Defendant deemed the report credible and ordered no further investigation. **Miller Dep. 64:1-5, Broyles Dep. 28:17-21; 29:18-24.**

22.    Based solely on Adcock's alleged verification of the racial slur, Defendant terminated Branum on October 13, 2017. **Miller Dep. 55:14-19; Broyles Dep. 30:6-15.**

23.    Absent the racial slur allegation, Branum would not have been terminated on October 13, 2017. **Miller Dep. 55:14-19; Broyles Dep. 30:6-15**

24.    Branum has never used a racial slur in her life and denies ever saying the "N" word. **Pl. Dep. 82:6-13.**

25.    None of Branum's former co-workers or managers have ever personally heard Branum use a racial slur. **Adcock Dep. 45:2-4, 50:20-22, 75:15-24; Haney Dep. 11:17-18, 23-25, 15:10-15; McKinney Dep. 19:14-24; 22:23-23:5.**

26.    Branum's former co-workers and manager find the allegation unbelievable and call it uncharacteristic of Branum. **Adcock Dep. 45:2-4, 50:20-22, 75:15-24; Haney Dep. 11:17-18, 23-25, 15:10-15; McKinney Dep. 19:14-24; 22:23-23:5.**

27.     Adcock now denies stating that the caller was reputable. **Adcock Dep. 54:11-19.**

28.     No one can identify, locate, or otherwise prove the anonymous caller's existence. **Adcock Dep. 53:16-21, 101:21-25, 102:2-21; Haney Dep. 27:21-25, 28:1-12; McKinney Dep. 20:18-25, 26:1-6.**

29.     At the time of her termination, Branum was the oldest person working at the store. **Adcock Dep. 26:3-4.**

30.     After Branum's termination, her job duties were distributed to her younger co-workers. **See Ex. H, Def. Supp. Resp. to Pl. Interrogatory No. 18.**

31.     Branum had a good wage, benefits, a good schedule, seniority, and vacation time. **Pl. Dep. 51:16-23.**

32.     Branum applied for multiple cashier, teller, and other such positions and various locations around her home. **Pl. Dep. 16:15-23, 18:5-10.**

33.     During her period of unemployment benefits, Plaintiff went at least once a week to look for jobs. **Pl. Dep. 19: 13-20.**

34.     Branum never received any job offers and had only one interview offer, which she declined because it was 35-40 miles away. **Pl. Dep. 17:7-9, 17:7-15.**

35.     Plaintiff's job search was difficult due to having to tell potential employers that she was terminated, and even worse for having to disclose that she was terminated for allegedly being a racist. **Pl. Dep. 52:14-21.**

## PLAINTIFF'S RESPONSE TO DEFENDANT'S "UNDISPUTED MATERIAL FACTS"

Branum generally objects to any information in the "Undisputed Material Facts" which does not relate directly to her discharge. Defendant's references to any alleged issues with Ms.

Branum's employment prior to the accusation of the use of a racial slur are immaterial, as none of these alleged issues was the basis for any termination decision.

1. Branum admits the statements in paragraphs 1-3 of Defendant's Statement of Undisputed Material Facts. ("Def's UF").

2. Branum denies the statement contained in paragraph 4 of Def's UF. The cited document lacks foundation and is unsupported by evidence. It has no identifiers which would serve to establish that it was applicable during Branum's employment with Defendant.

3. Branum denies the statement contained in paragraph 5 of Def's UF. The cited document does not indicate that it was "disciplinary," or that it relates to "dishonesty." The cited deposition testimony further does not state that it relates to any particular "discipline," let alone one occurring in December 2016.

4. Branum admits the statements in paragraph 6 of Def's UF, with clarification. Branum admitted that "according to this write-up," Defendant perceived her as being dishonest. **Ex. A, Pl. Dep. 74:18-20**. Branum's statement was in relation to the single situation referred to in the write up, not Defendant's general perception of her.

5. Branum admits the statements in paragraph 7 and 8 of Def's UF.

6. Branum denies the statement in paragraph 9 of Def's UF. Branum's reference to the stated customers were because Haney had asked who had been around and Branum simply "identified who was there." **Ex. B, Haney Dep. 15:5-9; Ex. A, Pl. Dep. 81:15-25.**

7. With respect to paragraph 10 of Def's UF, Branum admits that Adcock "took the bag. . . . just to make a point to [Haney] and [Branum]." **Ex. A, Pl. Dep. 81:10-15.**

8. With respect to paragraph 11 of Def's UF, Branum admits that she was disciplined but denies Defendant's characterization of the issue as "insubordination."

9.     Branum admits in part and denies in part Paragraph 12 of Def's UF. Branum admits that Debi Wybert was Defendant's customer service representative. Branum denies the remaining parts of Defendant's statement.

10.     Branum denies the statement in paragraph 13 of Def's UF. Branum stated that she did not think that Wybert was lying about taking the alleged call, but never stated that she otherwise believed anything relating to the call or situation.

11.     Branum admits the statement in paragraph 14 and 15 of Def's UF.

12.     Branum denies the statement in paragraph 16 of Def's UF. Branum denies that Adcock actually spoke with anyone regarding the alleged complaint.

13.     Branum denies the statements in paragraph 17 of Def's UF. Miller admitted that she did not review Plaintiff's employment history until after Adcock convinced her that the call was credible. **Ex. E, Miller Dep. 60:4-11.**

14.     Branum admits the statements in paragraph 18 of Def's UF.

15.     Branum denies the statements in paragraph 19 of Def's UF. Nowhere in the discipline or alleged statement does it mention that Branum used the customer's ethnicity in anything other than for identification purposes.

16.     Branum admits in part and denies in part the statement in paragraph 20 of Def's UF. Branum admits that Miller reviewed the stated email by Haney, but denies it was a correct and accurate recount of the event or statements as they occurred.

17.     Branum admits in part and denies in part the statements in Paragraph 21 of Def's UF. Branum admits that Miller reviewed her employment record, but denies that she was disciplined for dishonesty.

18.     Branum admits in part and denies in part the statements in paragraph 22 of Def's UF. Branum admits that Defendant has a policy against harassment, intimidation, and/or retaliation in the workplace. However, Branum cannot state whether the provided policy is the one in existence during her time of employment with Defendant.

19.     Branum is without sufficient information to admit or deny Def's statements in paragraph 23 of Def's UF. Branum objects to the use of the document, as it is void of any dates, signatures, or other characteristics which would otherwise lay the proper foundation to establish that it was the policy in effect during Branum's employment or otherwise known to Branum.

20.     Branum denies the statement contained in paragraph 24 of Def's UF that Miller's belief was done in good faith.

21.     Branum admits the statements contained in paragraph 25-27 of Def's UF.

22.     Branum admits the statements contained in paragraph 28 of Def's UF, with clarification. Branum testified that she didn't have any evidence because she "didn't even know about customer complaint until, like I said, the day that they called me in the office and terminated me." **Ex. A, Pl. Dep. 86:7-9.**

23.     Branum admits the statement contained in paragraph 29-30 of Def's UF.

24.     Branum denies the statement contained in paragraph 31 of Def's UF. Defendant's response to Plaintiff's Interrogatory No. 18, which asked Defendant to "Identify the names, birth year, and job duties of the employees who absorbed Plaintiff's workload," includes "Michael Haney, Department Head, birth year 1971." **See Ex. H, Defendant's response to Plaintiff's Interrogatory No. 18.**

25.     Branum admits the statements contained in paragraphs 32-36 of Def's UF.

26. Branum denies the statement contained in paragraph 37 of Def's UF. Branum stated that she "could have went for an interview," not that she was ever offered a job. **Ex. A, Pl. Dep. 17:4-9.**

27. Branum denies the statements contained in paragraph 38 of Def's UF, and that any alleged expert report accurately reflects Branum's ability to gain employment, given her age, lack of modern skills, and unique circumstance of involuntary termination.

## ARGUMENT AND AUTHORITIES

## I. SUMMARY JUDGMENT STANDARD.

Summary judgment is not appropriate if there exists a genuine material factual issue. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–51 (1986). In this regard, the court examines the factual record and reasonable inferences therefrom in the light most favorable to Plaintiff. *See Anderson,* 477 U.S. at 255; *Deepwater Invs. Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991); *McWilliams v. Jefferson County,* 463 F.3d 1113, 1116 (10th Cir.2006) ("In determining whether any genuine issue as to any material fact exists, evidence is to be liberally construed in favor of the party opposing the motion for summary judgment."). The Court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249. Applying this standard, summary judgment is not appropriate as detailed below.

## II. PLAINTIFF'S AGE DISCRIMINATION CLAIM DOES NOT FAIL AS A MATTER OF LAW.

Plaintiff's Second Amended Complaint brings a claim of age discrimination under the Age Discrimination in Employment Act ("ADEA"). Plaintiff has clearly established a valid claim of age discrimination under the law.

### A.      Plaintiff's prima facie case of age discrimination stands.

To establish a prima facie case of age discrimination based on employment termination in violation of the ADEA, Branum must show that 1) she was within the protected age group at the time of her discharge; 2) she was doing satisfactory work; 3) she was discharged; and 4) her position was filled by a younger person. *Rivera v. City and County of Denver*, 365 F.3d 912, 920 (10th Cir.2004) (citing *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir.1998)); *Young v. Cobe Laboratories, Inc.*, 1998 WL 184449, at -4 (10th Cir. Apr.17, 1998) (unpublished opinion) (citing *Gonzagowski v. Widnall*, 115 F.3d 744, 749 (10th Cir.1997)).

In this case, the parties agree both that Plaintiff was involuntarily terminated and that she was in the protected age group at the time of her termination. Defendant further admits that Plaintiff's job duties were distributed to younger individuals. **Pl.'s Statement of Undisputed Facts ("Pl.'s UF") ¶ 37**. Thus, the parties agree that three of the four elements of Plaintiff's prima facie burden are satisfied.

The parties' dispute focuses on the proof required to satisfy the second element. Defendant does not appear to dispute that Plaintiff satisfactorily performed her work. In fact, Defendant's only argument is that Plaintiff was terminated based on an alleged racial slur. In this regard, Defendant concedes that Plaintiff could perform the technical requirements of her position. The only criticisms are limited to what were essentially a lack of interpersonal skills and vague, unsubstantiated, claims of racism.

Cases asserting age discrimination based on termination require a prima facie element of satisfactory job performance. *See, e.g., Bolton v. Sprint/United Management Co.*, 220 F. App'x 761, 766 (10th Cir.2007) (unpublished opinion) (citing *Rivera*, 365 F.3d at 902); *McKnight*, 149 F.3d at 1128; *Cone*, 14 F.3d at 529. Notwithstanding this distinction, the Tenth Circuit has held

that, where the employer's proffered nondiscriminatory reason for the termination is unsatisfactory job performance, the validity of that contention should not be considered in a summary judgment motion challenging the Plaintiff's ability to establish the second element of a prima facie case. *Bolton*, 220 F.App'x at 766–67 (citing *MacDonald v. Eastern Wyoming Mental Health Center*, 941 F.2d 1115 (10th Cir.1991)). According to the Circuit:

> [C]oncluding that plaintiffs 'did not establish a prima facie case based on the reasons for their discharge raises serious problems under the McDonnell Douglas analysis" because it "frustrates a plaintiff's ability to establish that the defendant's proffered reasons were pretextual and/or that age was the determining factor.'

*Bolton*, 220 F. App'x at 767 (quoting *MacDonald*, 941 F.2d at 1119). According to the Circuit:

> [A] plaintiff may meet the second element of a 'prima facie case of discrimination in a discharge case by credible evidence that she continued to possess the objective qualifications she held when she was hired, or by her own testimony that her work was satisfactory, even when disputed by her employer, or by evidence that she had held her position for a significant period of time.'

*Id*. (quoting *MacDonald*, 941 F.2d at 1121); *see also Wagoner v. Pfizer, Inc.*, 2009 WL 304340 (D.Kan. Feb.9, 2009) (unpublished opinion). The Circuit has held that, in the summary judgment context, evidence that the employer terminated the plaintiff for unsatisfactory job performance should be considered at the final stage of the McDonnell Douglas burden-shifting analysis in which a plaintiff must show that the proffered nondiscriminatory reason for his termination is pretextual. *Id*. at 767–68.

Defendant do not dispute that Branum satisfactorily performed the technical requirements of her job. This is evidenced by the fact that Branum had worked for Defendant for over 22-years and had risen from the rank of cashier to that of department head. **Pl.'s UF ¶¶ 1, 11, 12.** She had also received numerous awards and pay raises related to her job performance.

Given Defendant's later arguments that Branum was perfectly capable and able to find similar, alternate employment, Defendant cannot contradict itself here by stating that Branum was unable to handle the technical requirements of her position. Should Defendant tried to do so here, Defendant would also need to account for any such deficiencies in its mitigation argument.

Though Defendant may otherwise try to aver that Branum's performance was unsatisfactory for other reasons, under *Bolton* and *McDonald*, that evidence should not be considered with regard to the second element of Branum's prima facie burden, and must instead be evaluated in connection with her pretext claim. Accordingly, Branum's prima facie burden is satisfied for purposes of Defendant's Summary Judgment Motion.

**B.**     **There is ample evidence that Defendant's proffered reason for termination is a pretext for age discrimination.**

Since Branum has established a prima facie case for age discrimination, the burden shifts to Defendant "to articulate some legitimate, nondiscriminatory reason" for its action. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). Should Defendant carry this burden, Branum must then have an opportunity to prove, by a preponderance of the evidence, that Defendant's proffered reasons were not the true reason for Branum's termination, but instead a pretext for discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Here, Branum has not only made a prima facie case of discrimination, but she can establish that Defendant's alleged "legitimate nondiscriminatory reason" for her termination is purely pretext.

Generally, in determining whether the proffered reason for a decision was pretextual, the court must examine the facts as they appear to the decision-maker. *Rivera v. City & Cty. of Denver,* 365 F.3d 912, 925 (10th Cir. 2004). However, Branum can still show pretext by evidence of such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's

proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir.1997) (internal quotation marks omitted); *See also Dewitt v. Sw. Bell Telephone Co.*, 845 F.3d 1299, 1311 (10th Cir. 2017) (citing *Macon v. United Parcel Serv., Inc.* 743 F.3d 708, 714 (10th Cir. 2014)). Pretext evidence typically takes one of three forms: (1) evidence that the employer's stated reason for the adverse employment action was false; (2) evidence that the employer acted contrary to a written company policy; or (3) evidence that the employee was treated differently from other similarly-situated employees who violated work rules of comparable seriousness. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000).

In this matter, Defendant asserts Branum was terminated because Defendant's Human Resources Director "believed, in good faith, the customer's complaint that [Branum] had used a racial slur, which is a violation of company policy. . . ." (citations omitted). **See Defendant's Motion for Summary Judgment [Doc. 58]**. Branum has sufficient evidence to establish that Defendant's alleged evidence and basis for termination is so implausible, incoherent, and internally contradictory, that that the decision must have been made on some other basis. *Rivera v. City & Cty. of Denver*, 365 F.3d 912, 925 (10th Cir. 2004).

Branum simply needs to show that Defendant's alleged evidence of her misconduct was so weak that a rational factfinder could infer that the reason given for her termination. Here, Defendant's own witnesses consistently agree that the proffered reason for termination, i.e., the alleged racist slur, was completely unbelievable and outside of Branum's character. **Pl.'s UF ¶ 33**. Defendant's employees agree that none of them had ever heard Branum swear, use a racist comment, be angry, or otherwise treated any employee or customer badly. **Pl.'s UF ¶¶ 2, 32**.

More shocking, the person that alleges he heard Branum's use of a racial slur appears to not exist. To date, there has been no witness that can positively identify this person. There is no known address or phone number. This person was listed as a witness, then subsequently withdrawn after Defendant filed a motion to strike "him" as a witness. (See Dkt. 57). The circumstances are just too unbelievable to give any credence at all to this alleged basis. It is unbelievable that Defendant took absolutely no action to verify any details of the call that led to the termination of Branum.

Branum had been an employee of Defendant's for over 22 years. **Pl.'s UF ¶ 1.** It is apparent that, over the last few years of Branum's employment, issues arose with her store manager, Michael Adcock ("Adcock"). **Pl.'s UF ¶ 3.** In over 22 years of employment, Branum's only write ups occurred in the last two-years of her employment, and each were initiated by Adcock. This demonstrates some animosity from Adcock towards Branum, which only accelerated after Branum's report to Loss Prevention regarding Adcock.

Defendant admits that, absent the alleged slur, Branum would not have been terminated on October 13, 2017. **Pl.'s UF ¶ 23.** Further, absent Adcock's report of his investigation, Defendant would have handled the situation differently. On October 6, 2017, a man self-identified as "Jason Smith" allegedly called Defendant's Customer Service department. **Pl.'s UF ¶ 13.** This man reported that, at least a week prior, Branum had used a racial slur after a couple of customers had left the store. **Pl.'s UF ¶ 13.** In response to the call, Defendant's Human Resources department requested that Adcock contact the caller to verify the story. **Pl.'s UF ¶ 14.** Adcock called the provided number and the person answering the phone stated that he had no idea who or what Adcock was talking about. **Pl.'s UF ¶ 15.**

Sometime later, on an unknown date and time, Adcock alleges that the anonymous caller called the store and spoke with Adcock. **Pl.'s UF ¶ 16.** During this alleged return call, the individual admitted to giving a false name and phone number. **Pl.'s UF ¶ 17.** Despite the admitted lies, Adcock never verified the caller's true identity or contact information. **Pl.'s UF ¶ 20.** However, Adcock assured Defendant that he knew who the man was, going so far as to refer to the caller as a "reputable white man." **Pl.'s UF ¶ 20.**

No one can identify, locate, or otherwise prove the anonymous caller's existence. (See Dkt. 57). The man's identity is now in such question that the Defendant has removed him as a witness, by filing an Amended Witness List without leave of Court and well past the deadline for witnesses**.** *See* Defendant's Amended Witness List [Doc. 59]. Given all of this, to say that the circumstances surrounding the alleged racial slur are weak, implausible, and inconsistent, would be an understatement.

Branum has never used a racial slur in her life and flatly denies ever saying the "N" word. **Pl.'s UF ¶ 24**. None of Branum's former co-workers or managers have ever personally heard Branum use a racial slur. **Pl.'s UF ¶ 25**. In fact, Branum's former co-workers and managers all call the allegation uncharacteristic and find it unbelievable. **Pl.'s UF ¶ 26**. If Defendant's own employees don't believe the allegations, it is completely reasonable to expect a jury of Branum's peers to likewise not give it any credence.

Defendant's relevant employees further have admitted that, absent the Adcock's assurances as to the caller's identity and reputable nature, Branum would not have been terminated on October 13, 2017. **Pl.'s UF ¶ 22**. Given that Adcock now denies referring to the caller as reputable and recants knowing who the caller was, it is apparent that the facts were skewed to ensure Branum's termination. Defendant's employees further admit that, absent Adcock's assurances, the caller

would not have been deemed credible and additional investigation ordered This clearly shows that Defendant's proffered reason was so weak, inconsistent, and false that a reasonable factfinder would likewise choose not to believe it was anything but pretext.

For every write up and every situation involving Branum, Adcock skewed the details to paint Branum in a negative light. With his actions during the investigation for the alleged slur, Adcock clearly made it his intent that Defendant would view Plaintiff as a dishonest racist. This is clearly a situation where the alleged, "legitimate" reason for Branum's termination is so weak, implausible, inconsistent, false, and contradictory, that any reasonable factfinder could rationally find it completely unworthy of credence. Hence, a reasonable fact finder could infer that Defendant did not act for the asserted non-discriminatory reasons. As such, Branum respectfully requests that this Court deny Defendant's Motion for Summary Judgment.

## II.     PLAINTIFF'S OADA CLAIM WAS DISMISSED BY THIS COURT.

Plaintiff acknowledges that, in its Order of April 20, 2020 [Dkt. 38] at 13, this Court dismissed Plaintiff's OADA retaliation claim and denied Plaintiff's request to amend her retaliation claim under the OADA.

## III.    PLAINTIFF MADE APPROPRIATE ATTEMPTS TO MITIGATE HER DAMAGES.

Employees claiming entitlement to back pay and benefits are required to make reasonable efforts to mitigate damages. *EEOC v. Sandia Corp.*, 639 F.2d 600, 627 (10th Cir.1980). Once back pay and benefits have been awarded, the burden is on the employer to show that the claimant did not exercise reasonable diligence in mitigating his or her damages. *Id.* To satisfy this burden, the employer must establish that: (1) there were suitable positions which the claimant could have discovered and for which they were qualified, and (2) the claimants failed to use reasonable diligence in seeking such positions. *Id.* (citation omitted).

In order to satisfy its burden, the Defendant was required to satisfy both prongs of the above two-part test. Defendant has wholly failed its burden of establishing the first prong - i.e., that suitable positions were available for Plaintiff. Defendant supplies an alleged expert report showing that there were cashier positions in the surrounding areas. This report is wholly deficient because it fails to take in to consideration multiple, pertinent aspects of Branum's unique circumstances.

Defendant chose to lump Branum in with the potential workforce as a whole. Defendant wholly ignores that there is a reason that age is a protected class – because elderly people are often discriminated against. Here, Branum is a woman in her 70's who had been at her job for 22-years. She was full-time, had a good wage, benefits, a good schedule, seniority, and vacation time. **Pl.'s UF ¶ 31.** Defendant's report and allegations take none of this in to account.

Further, Defendant fails to account in any way for the fact that Plaintiff's job search is made difficult due to having to tell potential employers that she was terminated. And, even worse, for having to disclose that the termination was for making racist remarks. **Pl.'s UF ¶ 35.** Especially in today's climate, having to admit that she was accused of being a racist virtually guarantees that Branum will be unable to find employment. As such, Defendant has wholly failed to identify any suitable positions that Branum could have discovered and for which she was qualified.

Regarding reasonable diligence, Defendant misconstrues and flat out misstates Branum's job-search attempts. Branum admits that she rarely uses her computer or the internet, not even for social media purposes. This is not unheard of for a person over 70. Instead, after Branum's termination, she utilized both the Oklahoma Employment Security Commission ("OESC") and newspapers in her job search.

Following her termination, the OESC helped Branum create a resume and assisted her in filling out employment applications. Branum applied for multiple cashier, teller, and other such

positions and various locations around her home. **Pl.'s UF ¶ 32.** During her period of unemployment benefits, Plaintiff went at least once a week to look for jobs. **Pl.'s UF ¶ 33.** Despite this, Branum never received any job offers. **Pl.'s UF ¶ 34.** Further, Branum only had one offer for an interview, which was 35-40 miles from her home. **Pl.'s UF ¶ 35.** Clearly, Branum made all attempts that a woman of her age, knowledge, and abilities would be able to make for a job search. In failing to account for any of this, Defendant has failed to provide sufficient evidence that Branum failed to make reasonable job search efforts.

## CONCLUSION

There are legitimate disputes of fact which preclude judgment at this juncture. There are legitimate disputes as to the admissibility of the alleged facts that form the basis of Terry Branum's termination. The circumstances leading up to her termination are highly questionable and appear to be motivated by some animus from her supervisor, which is clearly a pretext for her termination.

WHEREFORE, Plaintiff respectfully requests this Court deny Defendant's motion in its entirety and award all other relief, at law or in equity, to which the Court determines Plaintiff is entitled.

Respectfully submitted,

**MCDANIEL ACORD & LYTLE, PLLC**


___*/s/Gregg J. Lytle*_____
Gregg J. Lytle, OBA #20759 (glytle@ok-counsel.com)
Kelly M. Hunt, OBA #31387 (kmhunt@ok-counsel.com)
9343 E. 95th Court
Tulsa, Oklahoma  74133
Telephone:  (918) 382-9200
Facsimile:  (918) 382-9282
**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I certify that on the 6th Day of November, 2020, I electronically transmitted the attached document, and mailed by U.S. Mail with proper postage, to the following ECF registrants:

Kristin M. Simpsen                kristin.simpsen@mcafeetaft.com
Elizabeth Bowersox              elizabeth.bowersox@mcafeetaft.com
McAfee & Taft
10th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK 73102
**Attorneys for Defendant**


        _/s/ Gregg J. Lytle_____

        GREGG J. LYTLE