IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

TERRY BRANUM,                        )
                                     )
                Plaintiff,           )
                                     )
v.                                   )    Case No. CIV-18-281-KEW
                                     )
ORSCHELN FARM AND HOME, LLC,         )
                                     )
                Defendant.           )

## OPINION AND ORDER

This matter comes before the Court on Defendant Orscheln Farm
and Home, LLC's Motion for Summary Judgment (Docket Entry #58).
Upon review and consideration of the filings of the parties, this
Court renders the following ruling.

The undisputed facts show Plaintiff was hired by Defendant in
1995 as a cashier/salesclerk. In 2000, Plaintiff was promoted to
a department head, the position she held at the time of her
termination in October of 2017. For several years of her employment
with Defendant, Michael Adcock ("Adcock") served as store manager
and Plaintiff's supervisor.

Plaintiff, an individual over forty, testified that prior to
her termination, Adcock and other co-workers made comments about
her age. She contends that on one occasion Adcock took a telephone
call and indicated the caller "wanted the old lady." When
questioned further, however, Plaintiff testified she did not know
if Adcock was merely repeating what the caller said, but Adcock

did not make the reference on any other occasion. She also testified Adcock referenced her age "in a condescending way" when he suggested she unload a box instead of lifting it and made comments when she was unable to pick up large boxes of clothing that "if you can't do your job maybe it's time for you to retire." She testified he made weekly references to her retiring and on one occasion when she complained about her back hurting, Adcock said that "maybe your age is getting to you." Adcock denies making the comments to Plaintiff.

Plaintiff testified that other employees also made comments about her age. She testified her co-worker Michael Haney ("Haney") called her "granny grump." She described her relationship with Haney as "good" and agreed she had a joking-type relationship with him. She did not believe Haney had ill will toward her when using the name. Haney testified he used the nickname after he heard Plaintiff's husband use it. Plaintiff testified her husband sometimes called her "granny." She also testified that younger employees repeatedly asked her when she planned to retire. She did not testify, however, that they asked so they could take over her position. Plaintiff further testified Adcock gave the younger employees more desirable job duties that she "possibly" could perform. The employees would say it was "probably because of her age." Plaintiff never reported any of the comments or actions to Defendant.

During the last few years of her employment with Defendant, Plaintiff received a handful of write ups and customer complaints. In July of 2015, she received a disciplinary write up from Adcock related to a customer complaint that she would not provide a refund without a receipt. Defendant's refund policy did not require a receipt, only approval by a manager. Plaintiff called Adcock, and after telling her to do the return, Plaintiff still questioned doing the return. Plaintiff had told customers in the past they could not return items without a receipt. She was reminded of the policy on several occasions. A later statement by the assistant manager indicated that when Plaintiff was talking about the customer and the complaint, she referenced the customer being a "black" woman. This caused concern that Plaintiff refused to do the refund because the customer was African American. In the write up, Plaintiff was warned that if she continued not to follow the refund policy, it could result in further disciplinary action and would result in termination.

In August of 2015, a customer called customer service and reported to Debi Wybert ("Wybert"), a customer service representative located at Defendant's corporate office, that Plaintiff had a "weird attitude" and was rude to him when he came into the store. The customer believed it was because he was black. The customer initially reported his concern to Adcock, who told the customer to report it through the corporate office. After

3

receiving the complaint, Wybert sent an email to Lynee Miller ("Miller"), Defendant's Director of Human Resources. At Miller's request, Adcock followed up with the customer regarding the complaint. The customer explained he had already asked Plaintiff for help, but when other customers came in the store, she waited on them instead. He asked for Plaintiff to get a manager, and she acted like she would not. He then left the store. Plaintiff did not receive a written disciplinary write up regarding the complaint, but it was discussed with her.

Plaintiff received a write up on December 22, 2016, signed by assistant manager Dawnyell McKinney. It referenced a previous write up for attendance, and Plaintiff's sharing of inaccurate disciplinary information with a co-worker. It stated that Plaintiff admitted to sharing the inaccurate information and warned her that she must "share honest and accurate information." If there was a reoccurrence of the behavior, the consequence would include disciplinary action, including termination. Plaintiff refused to sign the write up, claiming it was inaccurate, but she acknowledged in her testimony that Defendant believed she was dishonest, with respect to that particular write up.

On September 22, 2017, Plaintiff reported Adcock to Defendant's Loss Prevention Department for performing what she believed was an improper employee return. On September 25, 2017, Plaintiff received a disciplinary write up from Adcock when she

4

failed to complete the task of hanging bibs. She was asked to hang all bibs, and she did not do so. The consequence listed for a reoccurrence was disciplinary action or termination. Although Plaintiff does not dispute that she failed to hang all the bibs, she refused to sign the write up and disagrees that she was insubordinate. Plaintiff testified that she believed her report of Adcock to Loss Prevention could have had something to do with her September 25, 2017 write up and her termination.

On October 6, 2017, Wybert received another customer complaint by telephone regarding Plaintiff. She sent an email, wherein she reported to Miller, and district manager David Broyles ("Broyles"), as well as copying her supervisor, that "[c]ustomer Jason Smith . . . said he was in the Okmulgee store (last week). Terri an[] older lady called some people 'ni**ers' after they left the store. He said he was very uncomfortable." Upon notification of the customer complaint and in accordance with usual procedure, Miller requested that Adcock follow up with the customer to verify the complaint.

Adcock called the customer number provided to Wybert. It was not the correct number. Adcock testified that within a few minutes of his call, the customer called back. The customer had given customer service another number because he wanted to remain anonymous. He told Adcock his name was Jason at one point and then Aaron at another, and he used the last name of Smith. Based on

5

their conversation, Adcock believed he recognized the customer as Aaron, and he was a frequent customer. His voice sounded familiar to Adcock, and the customer described himself by saying he was in the store during the prior week and Adcock helped him with fencing.

After speaking with Smith on the telephone, Adcock sent an email dated October 10, 2017, to Miller reporting his conversation with the customer. Smith explained to Adcock that two African American males, one older and one younger, were in line behind him when Plaintiff checked him out. After he paid, Smith decided to look at another item near the register. After the two African American customers paid and exited the store, Smith heard Plaintiff say, "damn ni**ers." He did not see anyone else around and left the store. He called and reported Plaintiff because her conduct bothered him, especially because he knew of an African American employee named Dawn who worked at the store.

On October 10, 2017, Haney sent an email to Miller regarding an incident when he left a bank bag near the register where Plaintiff was working. He asked Plaintiff to watch the bag while he helped a customer. When he returned to the register, the bank bag was gone. He questioned Plaintiff about the bag and who may have taken it. She responded that the only people around the counter area were two black customers. Haney later learned that Adcock picked up the bag. Neither the email nor Haney's testimony indicate exactly when the incident occurred.

6

After being notified of the customer complaint regarding Plaintiff's use of a racial slur, Miller reviewed Plaintiff's employment file. She reviewed the past customer complaints regarding Plaintiff's treatment of black customers from 2015, including the customer complaint regarding Plaintiff's treatment of a black male customer and Plaintiff's refusal to return an item without a receipt and the concern that it was related to the customer being a black woman. She also reviewed the incident with the bank bag and that Plaintiff implicated a black male customer as someone who could have stolen the bag. She further considered Plaintiff's other disciplinary write ups, including for being dishonest.

Defendant had policies that prohibited conduct that was demeaning to another person, including the use of unwelcome words or comments related to an individual's race, and Plaintiff was aware of such policies. Miller testified that based upon Plaintiff's use of a racial slur in violation of company policy, she made the decision to terminate Plaintiff's employment "in conjunction" with Adcock's verification with the customer of the initial complaint made to Wybert and Plaintiff's prior history with African American customers that raised similar concerns. Miller believed in good faith that the customer report that Plaintiff used a racial slur was true, and she testified the use of the racial slur constituted grounds for discharge. At the time

7

she made the decision to terminate Plaintiff's employment, Miller was unaware of Plaintiff's age and Plaintiff's report to Loss Prevention regarding Adcock.

On October 11, 2017, Miller emailed Adcock and Broyles, instructing them to terminate Plaintiff's employment. The email included talking points for the termination. On October 13, 2017, Adcock called Plaintiff to a back office, and with Broyles present, he addressed the talking points with Plaintiff, which referenced the use of the racial slur and the prior incidents reviewed by Miller. He notified Plaintiff her employment with Defendant was terminated.

After her termination, no additional employee was hired for Plaintiff's position. Plaintiff's job duties were absorbed by other employees who already worked at the store. These employees included both men and women who were younger and older than forty.

Plaintiff commenced this action on June 13, 2018, in Okmulgee County District Court. Defendant removed the action to this Court on August 24, 2018, and then filed a partial motion to dismiss on August 31, 2018. On June 20, 2019, the Court dismissed Plaintiff's claims for negligence, intentional infliction of emotional distress, and any *Burk* tort claim alleged by Plaintiff without leave for amendment. The Court also dismissed Plaintiff's retaliation claim alleged pursuant to the Oklahoma Anti-Discrimination Act ("OADA"), but granted Plaintiff leave to amend

8

her complaint with regard to the claim. Plaintiff also alleged claims for age discrimination under the Age Discrimination in Employment Act ("ADEA") and the OADA. Defendant did not, however, seek dismissal of those claims in its partial motion to dismiss.

Plaintiff filed her Amended Complaint on June 28, 2019. She asserted claims against Defendant for: (1) discrimination in violation of the ADEA and (2) age discrimination and retaliation in violation of the OADA. Defendant then filed a motion to dismiss the amended complaint. On April 20, 2020, the Court granted Defendant's motion, dismissing Plaintiff's OADA retaliation claim without leave to amend and dismissing her ADEA and OADA age discrimination claims with leave to amend. Plaintiff filed a Second Amended Complaint, which Defendant answered. Defendant has now filed the subject Motion, seeking summary judgment on Plaintiff's ADEA and OADA age discrimination claims.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Universal Money Centers v. A.T. & T.*, 22 F.3d 1527, 1529 (10th Cir.), *cert. denied*, 513 U.S. 1052 (1994). The moving party bears the initial burden of showing that there is an absence of any issues of material fact. *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Applied Genetics v. First Affiliated Securities*, *Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990); *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir. 1983).

The Court will not consider statements of fact, or rebuttals thereto, which are not material or are not supported by competent evidence. Fed. R. Civ. P. 56(c)(1)(A), 56(e)(2), 56(e)(3). Only admissible evidence may be considered when ruling on a motion for summary judgment. *Jaramillo v. Colorado Judicial Dep't*, 427 F.3d 1303, 1314 (10th Cir. 2005) (citation omitted) (holding that hearsay evidence is not acceptable in opposing a summary judgment motion); *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment

in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) (citations omitted).

The ADEA prohibits an employer from "discharg[ing] or otherwise discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). In *Gross v. FBL Financial Servs., Inc.*, 557 U.S. 167, 177-78 (2009), the United States Supreme Court stated that a claim under the ADEA requires "but-for" causation, but the Tenth Circuit has not interpreted *Gross* to require that age be the "sole cause of the adverse employment action." *Jones v. Oklahoma City Pub. Sch.*, 617 F.3d 1273, 1278 (10th Cir. 2010). Instead, it has required that a plaintiff prove that age was the determining factor that led to the adverse action, even if other factors contributed to the adverse action. *Id*. at 1277-78.

To establish a case of intentional discrimination, a plaintiff has two options – she may satisfy her burden of proof by offering direct evidence of discriminatory intent or she may demonstrate such intent indirectly by following the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To prevail by coming forth with direct evidence, "a plaintiff must introduce direct or circumstantial evidence that the alleged [discriminatory] motive 'actually relate[s] to the question of discrimination in the particular

11

employment decision, not to the mere existence of other, potentially unrelated, forms of discrimination in the workplace.'" *Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 550 (10th Cir. 1999) (citations omitted). "Direct evidence demonstrates on its face that the employment decision was reached for discriminatory reasons." *Danville v. Regional Lab Corp.*, 292 F.3d 1246, 1249 (10th Cir. 2002). "In contrast, '[s]tatements of personal opinion, even when reflecting personal bias or prejudice, do not constitute direct evidence of discrimination, but at most, are only circumstantial evidence of discrimination because the trier of fact must infer discriminatory intent from such statements.'" *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1117-18 (10th Cir. 2007).

Plaintiff has not come forward with any direct evidence of age discrimination.[1] The comments by Adcock and other employees that Plaintiff related to her age, questions about retirement, or Plaintiff's belief that younger employees received more desirable job duties all require an inference of discrimination and could be interpreted in different ways. *See Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1137 (10th Cir. 2000) (finding comments by supervisor "reflect[ed] his personal opinion, not an existing company policy,

---

[1]   As Defendant points out in its briefing, and the Court agrees, Plaintiff's Second Amended Complaint did not raise a claim for hostile work environment based on age.

and therefore . . . d[id] not constitute direct evidence of discrimination."). Moreover, no direct animus based upon Plaintiff's age was demonstrated in the decision-making process resulting in the adverse employment action taken against her. As a result, the *McDonnell Douglas* framework must be utilized to analyze Plaintiff's claims.

"If there is no direct evidence of discrimination, the *McDonnell Douglas* . . . burden-shifting framework is used to indirectly prove intentional discrimination." *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005), citing *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1191 (10th Cir. 2000). Under *McDonnell Douglas*, a plaintiff must first demonstrate a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. To state a *prima facie* case of age discrimination under the ADEA, a plaintiff must establish by a preponderance of the evidence that "[(1)] she is a member of a protected class, [(2)] she suffered an adverse employment action, and [(3)] the challenged action occurred under circumstances giving rise to an inference of discrimination." *Bennett v. Windstream Communications, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015). The standard for establishing a *prima facie* case is not an onerous burden for a plaintiff. *McDonnell Douglas*, 411 U.S. at 802, n.13; *see also Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981).

Once a plaintiff establishes a *prima facie* case, the burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its conduct against a plaintiff. At this stage, the defendant need only "explain its actions against the plaintiff in terms that are not facially prohibited by [the ADEA]." *EEOC v. Flasher Co., Inc.*, 986 F.2d 1312, 1317 (10th Cir. 1992). If a defendant meets its burden, then the plaintiff must demonstrate by a preponderance of the evidence that the reason proffered by the defendant is pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 803.[2]

Although Plaintiff and Defendant dispute whether Plaintiff can establish a *prima facie* case of age discrimination, for purposes of ruling on the motion for summary judgment, this Court assumes Plaintiff has established a *prima facie* case. Likewise, this Court finds that Defendant has provided a legitimate, nondiscriminatory reason for the decision to terminate Plaintiff's employment – Plaintiff's use of a racial slur in front of a customer. *See Stone*, 210 F.3d at 1140 ("Once a defendant asserts a facially nondiscriminatory reason for the termination, 'the presumption of discrimination established by the prima facie showing simply drops out of the picture,' and the analysis shifts

---

[2]     Even though the burdens shift between a plaintiff and a defendant, the ultimate burden of persuasion remains with a plaintiff to proffer evidence that the defendant engaged in prohibited discriminatory conduct. *Texas Dep't of Cmty. Affairs*, 450 U.S. at 253.

to the plaintiff's ultimate burden of showing that the defendant discriminated on the illegal basis of age.") (citation and quotation omitted). Accordingly, the Court will focus its discussion of the evidence on whether Defendant's proffered reason for terminating Plaintiff's employment was pretext for age discrimination. *Id*. ("A plaintiff may then resist summary judgment if he or she can present evidence that the proffered reason was pretextual, 'i.e. unworthy of belief.'"), quoting *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995).

"Pretext can be shown by 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'" *Riggs*, 497 F.3d at 1118, citing *Rivera v. City & County of Denver*, 365 F.3d 912, 925 (10th Cir. 2004). In *Bennett v. Windstream Communications, Inc.*, 792 F.3d 1261, 1268 (10th Cir. 2015), the Tenth Circuit discussed the importance of focusing on the facts as they appear to the decision maker when evaluating pretext:

> [I]n evaluating alleged pretext we must consider the facts as they appeared to the decision-makers. *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1119 (10th Cir. 2007). We will not second-guess an employer's business judgment or replace its opinion of best practices with either an employee's opinion or our own. *Garrison v. Bambro, Inc.*, 428 F.3d 933, 938 (10th Cir. 2005). Thus,

> we do not ask whether an employer's decisions were wise
> or fair; we ask only 'whether the employer honestly
> believed its reasons and acted in good faith upon them.'
> *Riggs*, 497 F.3d at 1118-19.

*Id*. "'Even a mistaken belief can be a legitimate, non-pretextual reason for an employment decision.'" *Riggs*, 497 F.3d at 1119, quoting *Piercy v. Maketa*, 480 F.3d 1192, 1200 (10th Cir. 2007).

In *Dewitt v. Southwestern Bell Telephone Company*, 845 F.3d 1299 (10th Cir. 2017), the court noted that "[e]vidence of pretext 'may take a variety of forms[,]'" including "'evidence that the defendant's stated reason for the adverse employment action was false; . . . evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances; or . . . evidence that . . . [the plaintiff] was treated differently from other similarly-situated employees who violated work rules of comparable seriousness.'" *Id*. at 1307, quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1231 (10th Cir. 2000).

In an attempt to show that Defendant's proffered reason for terminating Plaintiff's employment was a pretext for age discrimination, Plaintiff asserts Defendant's reason for her termination is "so weak, implausible, inconsistent, false, and contradictory, that any reasonable factfinder could rationally find it completely unworthy of credence." Plaintiff's Response to Defendant's Motion for Summary Judgment, p. 16 (Docket Entry #61).

To establish pretext, Plaintiff appears to focus on: (1) testimony by co-workers that it was unbelievable that Plaintiff used a racial slur and it would be out of character for Plaintiff; (2) age-related comments and actions by Adcock and other employees prior to her termination; (3) animosity toward Plaintiff by Adcock during the time period leading up to the customer complaint; (4) Defendant's failure to positively identify and locate the customer who reported Plaintiff for using a racial slur; and (5) younger employees filling her position after her termination. The Court addresses Plaintiff's evidence of pretext below.

Plaintiff first attempts to establish pretext by relying on after-the-fact testimony from her co-workers, which she asserts supports her denial of using a racial slur. Certain of Plaintiff's co-workers provided testimony that they do not remember Plaintiff ever using foul language and/or treating a specific person or type of person differently during her employment with Defendant. They never heard Plaintiff use a racial slur prior to hearing about the customer complaint. Plaintiff's co-workers testified that such behavior would be uncharacteristic of Plaintiff. Even Adcock testified that he had not heard Plaintiff use foul language. This evidence, however, does not establish pretext for age discrimination. Miller testified that based upon her view of Plaintiff's employment file and the customer report, she believed in good faith that Plaintiff used the racial slur. *See Young v.*

*Dillion Companies, Inc.*, 468 F.3d 1243, 1251 (10th Cir. 2006) ("[W]hile evidence amassed during discovery may well suggest that Dillion's beliefs about Mr. Young were wrong, they do not suggest those beliefs were held in bad faith.").

Plaintiff next asserts that the combination of age-related comments and actions by Adcock and other employees and the questions about when she planned to retire all support a finding that the decision to terminate her was pretext for age discrimination. The undisputed facts, however, establish that Adcock did not make the decision to terminate Plaintiff's employment. It is undisputed that Miller made the decision to terminate Plaintiff. It is also undisputed that during her employment with Defendant, Plaintiff never made a report of age discrimination to Defendant.

The age-related comments and questions about retirement are not pretextual because Adcock did not make the decision to terminate Plaintiff and Miller had no way of knowing about the comments or actions, as Plaintiff never reported them. *See Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994) ("[A]ge-related comments by non-decisionmakers are not material in showing the hospital's action was based on age discrimination."); *see also Hinds v. Sprint/United Management Co.*, 523 F.3d 1187, 1200-01 (10th Cir. 2008) ("[I]nformation of which an employer is unaware cannot be inferred to be the basis for the employer's

decision to take action against the employee.") (citation
omitted). Moreover, other than generally testifying that Adcock
gave younger employees more desirable job duties or treated them
more favorably, Plaintiff fails to identify the specific
employees, the more desirable duties they were assigned, and
specific instances where she was treated differently. In any event,
"[a] plaintiff must demonstrate a nexus exists between the
allegedly discriminatory statement and the company's termination
decision, and therefore 'that age actually played a role in the
defendant's decisionmaking process and had a determinative
influence on the outcome[.]'" *Stone*, 210 F.3d at 1140 (citations
omitted). Plaintiff has not demonstrated the required nexus
related to these comments or actions and cannot therefore establish
that Miller's decision to terminate her was pretext for age
discrimination.

Plaintiff next attempts to establish pretext based upon
animosity by Adcock leading up to her termination, including write
ups by Adcock before and after Plaintiff reported him to
Defendant's Loss Prevention Department. Building upon this
animosity by Adcock, Plaintiff challenges the existence of the
customer who reported her use of the racial slur because the
customer could not be positively identified and could not be
located during the pendency of this litigation. She contends that
Defendant should have done more to verify the customer complaint

that led to her termination. Plaintiff asserts that all of this demonstrates that Defendant's reason for terminating her is weak, implausible, and inconsistent and would allow for a jury to find that Defendant did not act for the asserted non-discriminatory reason.

Plaintiff's argument questioning the effect of any animosity harbored against her by Adcock and its influence on the termination decision, the existence of the caller, and Defendant's verification of the customer complaint do not undermine Defendant's stated reason for terminating Plaintiff's employment. Assuming Adcock harbored animosity toward Plaintiff for any reason, he did not make the decision to terminate Plaintiff. Miller testified that at the time she made the decision to terminate Plaintiff, she did not know about Plaintiff's complaint about Adcock to Loss Prevention. Moreover, although Plaintiff disagrees with the Defendant's explanations for some of her write ups and other complaints, she does not dispute that the events forming the basis for them occurred.

Most importantly, Plaintiff has provided no evidence that Adcock had anything to do with the initial customer complaint regarding the racial slur, as it was made directly to Wybert by the customer. Although Plaintiff disputes that she used the racial slur, she testified that she did not believe Wybert was lying about taking the customer call and did not believe Wybert discriminated

20

against her because of her age. Thus, the undisputed facts support that even though the customer cannot be positively identified or located, a call about Plaintiff using a racial slur in front of a customer was received by Wybert.

Further, other than her belief that Adcock somehow spearheaded the customer complaint, Plaintiff has no evidence to support her contention. The evidence, including Adcock's email to Miller on October 10, 2017, and his later testimony, shows that Adcock spoke to the customer and fully verified the complaint. *See Aramburu v. Boeing, Co.*, 112 F.3d 1398, 1408 n.7 (10th Cir. 1997) (noting "subjective belief of discrimination is not sufficient to preclude summary judgment") (citation omitted). Plaintiff may disagree with Defendant's decision finding the customer complaint credible, but it is beyond the scope of this Court's authority to determine which complaints are sufficiently credible to be acted upon by Defendant. *See Riggs*, 497 F.3d at 1119 (noting a court will not second guess an employer's honestly held business judgment).

Finally, to the extent Plaintiff argues pretext based on younger employees filling her position after her termination, the evidence does not support such a finding. The evidence reveals that Plaintiff's position was not filled by one individual after her termination. Plaintiff's job duties were absorbed by other employees who already worked at the store. Spreading out

Plaintiff's job duties to remaining employees does not constitute replacement. *See McMahen v. Gaffey*, Inc., 52 Fed. Appx. 90, 92 (10th Cir. 2002), citing *Lilley v. BTM Corp.*,958 F.2d 746, 752 (6th Cir. 1992).

Plaintiff has failed to demonstrate the requirements necessary to establish that Defendant's decision to terminate Plaintiff was pretext for age discrimination. The evidence establishes that Miller made a good-faith decision to terminate Plaintiff for using a racial slur. At the time Miller made the decision, she did not know about Plaintiff's report to Loss Prevention involving Adcock, Plaintiff had not made any reports of age-related comments or actions by Adcock or other employees to Defendant, and Miller did not know Plaintiff's age. Even Plaintiff testified she had no proof that Miller discriminated against her based on her age.

Accordingly, whether Miller's decision to terminate Plaintiff was right or wrong, Plaintiff has failed to come forth with evidence that the reason for her termination was pretext for age discrimination. Defendant is therefore entitled to summary judgment on Plaintiff's ADEA discrimination claim.

Because the success of Plaintiff's age discrimination claim under the OADA is contingent on the success of her ADEA claim, Defendant is also entitled to summary judgment on Plaintiff's OADA claim for age discrimination. *See Bennett*, 792 F.3d at 1269

(finding that the plaintiff's gender and age discrimination claims under the OADA failed for the same reasons her Title VII and ADEA discrimination claims failed).

IT IS THEREFORE ORDERED that Defendant Orscheln Farm and Home, LLC's Motion for Summary Judgment (Docket Entry #58) is hereby **GRANTED.** Judgment will be entered for Defendant accordingly.

IT IS FURTHER ORDERED that the Telephonic Status Conference set for May 20, 2021 is hereby **STRICKEN.**

IT IS SO ORDERED this 19th day of May, 2021.


_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE